IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN J. TAURO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-1545 |
| | ) |
| MAX BAER, KATHLEEN R. MULLIGAN | ) |
| JOAN ORIE-MELVIN, YET UNNAMED | ) |
| EMPLOYEES OF THE DOMESTIC | ) |
| RELATIONS SECTION OF FAMILY | ) |
| DIVISION, INDIVIDUALLY | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM OPINION**

<u>CONTI</u>, District Judge

**I. Introduction**

Pending before the court is the motion to dismiss (the "Motion") (Docket No. 9) filed on March 3, 2009, by judicial defendants Max Baer ("Justice Baer"), Kathleen R. Mulligan ("Judge Mulligan"), and Joan Orie-Melvin ("Judge Orie-Melvin") (collectively, "defendants"). The Motion seeks to dismiss the complaint (Docket No. 3) filed, pro se, by John T. Tauro ("Tauro" or "plaintiff") on December 16, 2008. Defendants executed and returned waivers of service. (Docket Nos. 5-7.) On February 17, 2009, defendants' answers were due. (<u>Id.</u>) On March 2, 2009, plaintiff filed a request for entry of default and default judgment against defendants. ("Pl.'s Default J. Req.") (Docket No. 8.) On March 3, 2009, defendants filed the Motion together with a brief in support. (Docket No. 10.) On March 6, 2009, in light of defendants' filing the Motion, the court denied as moot plaintiff's request for entry of default and default

judgment.  On March 17, 2009, plaintiff filed a response to defendants' Motion.  (Pl.'s Resp.") (Docket No. 11.)  On November 3, 2009, this court issued plaintiff an order to show cause why his complaint should not be dismissed for lack of subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine.  (Docket No. 17).  On November 8, 2009, plaintiff filed his response to the court's order.  (Docket No. 18).  Because this court lacks subject-matter jurisdiction, the court will dismiss plaintiff's claims with prejudice.

## II.  Background

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 alleging that defendants violated his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, continually from 1993 until March 2007.  (Compl. ¶¶ 1-2.)  Justice Baer served as a judge of the Allegheny County Court of Common Pleas from 1989 until 2003 when he became a Justice of the Supreme Court of Pennsylvania.[1]  Since 1993, Judge Mulligan has served as a judge of the Allegheny County Court of Common Pleas and served as Administrative Judge of the family division from April 1999 through April 2, 2002.[2]  Judge Orie-

---

[1] Pursuant to Federal Rule of Evidence 201(b), the court takes judicial notice that Justice Baer was elected a justice of the Supreme Court of Pennsylvania in 2003.  See http:www.aopc.org/T/SupremeCourt/SupremeCourtJutices/JusticeBaer.htm.  A court may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute.  See FED. R. EVID. 201(b).  A judicially noticed fact must either be generally known within the jurisdiction of the court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  See Id.; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 398 (3d Cir. 2000);1JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. § 201.12[1] (Joseph M. McLaughlin, ed., 2d ed. 2009) ("While judicial notice based on general knowledge reflects the traditional approach . . . notice of veritable facts is a more modern development . . . consistent with the approach of the Uniform Rules of Evidence.").

[2] The court takes judicial notice that Judge Mulligan has served in the family division of the Allegheny County Court of Common Pleas since December 1993.  See FED. R. EVID. 201(b); http://www.legalspan.com/catalog2/faculty.asp?UserID=2005061424724273041. From April

Melvin[3] was appointed to the Allegheny County Court of Common Pleas in 1990.  She served in the civil, criminal and family divisions until November 1997, when she was elected to the Pennsylvania Superior Court.  In November 2007, Judge Orie-Melvin was retained for another ten-year term on the bench of the Superior Court of Pennsylvania.

**Allegations in the complaint**

Plaintiff alleges that Justice Baer, in his capacity as a judge of the Allegheny County Court of Common Pleas, appointed the Allegheny County Solicitor as Title IV-D attorney, in violation of Pennsylvania law prohibiting dual representation and in violation of due process. (Id. ¶ 7.)  Plaintiff asserts that because Justice Baer acted in an administrative capacity, as opposed to an official judicial capacity when making the appointment, judicial immunity does not attach.  (Id.)  Plaintiff contends that Justice Baer had no power to make the appointment reconsidering and overruling a lawful order that had previously appointed plaintiff as the primary physical custodian of plaintiff's minor child.  (Id. ¶ 8.)

Plaintiff concludes that Justice Baer's resulting order is a nullity, that Judge Orie-Melvin unlawfully promulgated an administrative action when she affirmed Justice Baer's nullity and that Judge Mulligan acted in an unlawful administrative promulgation when she reappointed the Allegheny County solicitor as Title IV-D attorney.  (Id. ¶¶ 8, 12-13.)  Plaintiff further alleges that Justice Baer, in his capacity as a judge of the Allegheny County Court of Common Pleas, issued criminal warrants and held criminal trials in family court, with knowledge that he had no

---

1999 through April 2002, Judge Mulligan served as Administrative Judge of the court's family division.  Id.

[3] The court takes judicial notice that Judge Orie-Melvin was appointed to the Allegheny County Court of Common Pleas in 1990 and elected to a full judicial term in 1991.  See FED. R. EVID. 201(b); see also http://www.superior.court.state.pa.us/bios.htm.  In 1997, she was elected to the Superior Court of Pennsylvania and retained for another ten-year term in 2007.  Id.

power to do so.  (Id. ¶ 9.)  Plaintiff was incarcerated six times during the period in issue - in theory -  for being in contempt of court orders.  (Id. ¶ 17.)  Plaintiff contends that defendants have used arrest and incarceration to collect judgments without the power of law to do so, thereby creating a debtors' prison, in violation of the Constitutions of the United States and the Commonwealth of Pennsylvania.  (Id.  ¶¶ 23-27.)

**Allegation in the Response to Rule to Show Cause**

This court issued a rule to show cause why the complaint should not be dismissed for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine.  Among other things, this court noted plaintiff was seeking to nullify state court judgments against him.

Plaintiff did not set forth factual allegations in his response to the rule to show cause.  He merely repeats his general conclusory statements that defendants acted in an administrative capacity.  He, however, acknowledged that there was " a court judgement using the non existent rule . . ." (Pl.'s Resp. To Rule to Show Cause ¶ 8, Docket No. 18.)  While he argues the court judgment " is not" the cause of action for this case," (Id.) the judgments entered by the state courts, which predate the filing of the complaint and which are referred to in the complaint, would, in effect, have to be nullified for relief to be granted.

Defendants' Motion

Defendants make three arguments.  First, that the doctrine of judicial immunity is an absolute bar to any claims for damages against them.  (Defs.' Br. 1-3).  Second, that plaintiff's claims are barred by the applicable statute of limitations.  (Id. at 3-4).  Third, that judicial immunity is applicable with respect to injunctive relief and attorney's fees by the clear terms of § 1983, as amended by the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110

Stat. 3847 (1996).  Because this court lacks subject-matter jurisdiction, the case must be dismissed and the arguments raised by defendants will not be addressed beyond a footnote.

### III.  Legal Standards

As a threshold matter this court must inquire whether it has subject-matter jurisdiction. In re Orthopedic "Bone Screw" Prods. Liab. Litig. 132 F.3d 152, 155 (3rd Cir. 1997) (citing Underwood v. Maloney, 256 F.2d 334 (3d Cir.), cert. denied, 358 U.S. 864 (1958); Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc. 905 F.2d 42, 45 (3d Cir. 1990) (" It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto.") (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, (1986)). Consequently, "[a] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits." Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila, 657 F.2d 29, 36 (3d Cir.1981)(citing American Fire & Cas. Co. V. Finn, 341 U.S. 6, 71 (1951)).

The issue of jurisdiction may be raised *sua sponte* by the court.  See Meritcare v. St. Paul Mercury Ins., 166 F.3d 214, 217 (3d Cir.1999) ("A federal court has the obligation to address a question of subject matter jurisdiction *sua sponte."),* abrogated on other grounds by Exxon Mobil Corp. v. Allapattah, 545 U.S. 546 (2005); see also Sieger v. Nationwide Mut. Ins. Co., No. Civ. A. 04-5117,  WL 1140649, at * 2 (M.D. Pa. 2007) (the court is allowed to raise the issue of jurisdiction *sua sponte*); Horn & Hardart Sys. v. Hunter, No. Civ. A. 04-5117, 2005 WL 1522266, at *1 (D. N.J. June 27, 2005) ("Jurisdiction is a preliminary issue that may be raised by a district court to ensure that a case properly belongs in federal court.") (citing Meritcare v. St.

Paul Mercury Ins., 166 F.3d 214, 217 (3d Cir. 1999); Daily v. Phila., 98 F. Supp.2d 634, 636 (E.D. Pa. 2000) ("Lack of subject matter jurisdiction may be raised at any time by the court *sua sponte.*").

The burden of establishing subject-matter jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction. KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936); see Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the court's subject-matter jurisdiction is challenged based upon the sufficiency of the pleading's allegations, i.e., there is a "facial" attack on the pleading, the allegations in the complaint are taken as true and construed in a light most favorable to the complainant. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (case dismissed upon facial attack on complaint, without consideration of extrinsic evidence); Cedars-Sinai Med. Center v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); 2A James W. Moore et al., Moore's Federal Practice ¶ 12.07[2.-1], at 12-51 to 52 (1993). The court raised the issue of subject-matter jurisdiction based upon the allegations in the complaint. See Fed. R. Civ. P. 12(h)(3). Plaintiff in his response to the rule to show cause did not present any extrinsic evidence and essentially relied on and reargued the allegations in his complaint.

In light of plaintiff's response to the rule to show cause, the court concludes that the issues presented here raise a facial challenge to the court's subject-matter jurisdiction and the court is not required to review evidence extrinsic to the pleadings.

**Discussion**

The Rooker-Feldman doctrine is applicable in this matter. The Rooker-Feldman doctrine provides that federal district courts lack subject-matter jurisdiction to review a final decision of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with a state court judgment which predates the filing of the federal action. Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992) (citing, inter alia, District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)); see Knapper v. Bankers Trust Co. (In re Knapper), 407 F.3d 573 (3d Cir. 2005); see also Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream, 317 F. App'x 263 (3d Cir. 2009).

When a plaintiff seeks to litigate a claim in a federal court, the existence of a state court judgment in another case bars the federal proceeding under the Rooker-Feldman doctrine when entertaining the federal court claim would be the equivalent of an appellate review of that order. See Ernst v. Child & Youth Servs., 108 F.3d 486, 491 (3d Cir. 1997). For that reason, the Rooker-Feldman doctrine applies when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual. Under those circumstances, federal claims are inextricably intertwined with the state court's decision. Id. (citing FOCUS v. Allegheny Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)). The Rooker-Feldman doctrine precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling. FOCUS, 75 F.3d at 840; Blake, 953 F.2d at 71.

This limitation upon federal district court subject-matter jurisdiction derives from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of

a state in which a decision could be had, may be reviewed by the Supreme Court." 28 U.S.C. § 1257; see Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir. 1992) (citations omitted). Litigation challenging the correctness of the state court's resolution of the federal question must be through appellate review in the state courts and ultimately may be reviewed by the United States Supreme Court - not by a district court.

In Exxon Mobil Corp. v. Suadi Basic Industries Corp., 544 U.S. 280 (2005), the Court reviewed the Rooker-Feldman doctrine and held that the doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 283-284. The Supreme Court reasoned that, in those instances, federal court complaints should be dismissed for want of subject-matter jurisdiction. Id. "Rooker-Feldman bars a losing party in a state court 'from seeking what in substance would be appellate review of the state judgment in a United State district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Id. (quoting Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)). The Supreme Court found that the Rooker-Feldman doctrine did not apply in Exxon Mobil because the state court judgment at issue in that decision had not been entered prior to the filing of the federal court action. Id at 293-94.

Here, the state court judgments referred to in the complaint predate the filing of this action - thereby implicating the applicability of the Rooker-Feldman doctrine. In essence, plaintiff is asking this court to act as an appellate court and review the prior state court decisions by expressly requesting this court to overturn them – by declaring the decisions of the state courts a "nullity." Compl. ¶¶8,10-12. Plaintiff in his response to the rule to show cause disingenuously

argues he is not seeking to void a state court decision. His action, if successful, would have that effect because the state court judgments are intertwined with the alleged administrative actions about which plaintiff complaints. This court declines, as it must, plaintiff's invitation. This court concludes that it is divested of subject-matter jurisdiction by reason of the application of the Rooker-Feldman doctrine.

Plaintiff alleges in his complaint that he was wronged in the Pennsylvania state courts by various orders. Plaintiff now suggests that this court can right perceived wrongs that occurred during those state court proceedings. This court, however, is powerless to do so. Were this court to entertain this complaint it would be effectively engaging in appellate review of the decisions of a Pennsylvania state court, because granting the relief that plaintiff requests would in effect nullify the state courts' judgments.

Any federal constitutional claim asserted by plaintiff is inextricably intertwined with the state court judgments at issue because those claims will succeed only to the extent that the state courts wrongly decided the issues before them. Plaintiff is not asserting a federal claim independent from the prior state court judgments. In other words, plaintiff cannot prevail on his federal claims unless this court finds that the state courts wrongly decided the state court decisions plaintiff seeks to nullify. See FOCUS, 75 F.3d at 840; Blake v. Papadakos, 953 F.2d at 71. Under these circumstances, a lower federal court does not have jurisdiction to review a state court judgment. See Ernst, 108 F.3d at 491 (observing that the United States Supreme Court has exclusive jurisdiction to review decisions of the state courts for compliance with the United States Constitution). "[A]ppellate jurisdiction to reverse or modify a state court judgment is lodged . . . exclusively in [the Supreme] Court. Federal district courts...are empowered to

exercise original, not appellate jurisdiction." Exxon Mobil, 544 U.S. at 283. If a plaintiff wishes to reverse or modify a state court judgment in a federal forum, he must file a petition for a writ of certiorari with the United States Supreme Court.

Even if the state courts may not have considered plaintiff's constitutional claims in finding against plaintiff, plaintiff had the opportunity to raise those claims on appeal in the state courts. Parkview Assocs. P'ship v. Lebanon, 225 F.3d 321, 324 (3d Cir. 2000) ("a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under § 1257, not a separate action in federal court"). Here, the relief requested by plaintiff is in the nature of rendering the state court judgments null and void. When a plaintiff has the opportunity to raise his constitutional claims on appeal and fails to do so, the opportunity alone, is sufficient to invoke the applicability of the Rooker-Feldman doctrine. Id.; see Hollins v. Wessel, 819 F.2d 1073, 1074 (11th Cir. 1987). This court must dismiss this action because it lacks subject-matter jurisdiction over plaintiff's federal claims under the Rooker-Feldman doctrine.[4] Because this court lacks subject-matter jurisdiction over plaintiff's claims, it is unnecessary for the court to address defendants' arguments. Those issues are moot.[5]

---

[4] Plaintiff's claims against employees of the domestic relations section of the family division of the court in 2007 are against unnamed employees. The allegations against those unnamed defendants are inextricably intertwined with the state court decisions which plaintiff asserts are a nullity and, as discussed above, this court lacks jurisdiction over those claims, as well as the claims asserted against Justice Baer, Judge Mulligan and Judge Orie-Melvin.

[5] Even if this court had jurisdiction, plaintiff's claims against defendants appear to be time barred. The United States Court of Appeals for the Third Circuit has considered whether a claim is barred by the statute of limitations in the context of a motion to dismiss where the viability of that defense may be discerned from the complaint itself, i.e., where the facts as pled demonstrate that the claim was not timely filed. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1. (3d Cir. 1994).

42 U.S.C. § 1983 does not contain a statute of limitations. The federal courts look to

state law to determine what statute of limitations will be applied in a § 1983 action. Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989); see Wilson v. Garcia, 471 U.S. 261, 268 (1985) ("The length of the limitation period . . . is to be governed by state law.") (later overruled with respect to claims brought under the Securities Exchange Act of 1934). All § 1983 claims should be treated as personal injury actions in order to determine the appropriate limitations period under state law. Bougher, 882 F.2d at 78; see Wilson, 471 U.S. at 272-76, 280. In Pennsylvania, personal injury actions are subject to a two-year limitations period. 42 PA. CON. STAT. § 5524. The applicable statute of limitations for a § 1983 claim brought in the federal courts in Pennsylvania is two years. Bougher, 882 F.2d at 78.

While federal courts apply state law statute of limitations in a § 1983 action, federal law determines when a claim accrues. Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1988). The statute of limitations for a § 1983 action begins to run from the time that a plaintiff knows, or has reason to know, of any injury which is the basis of the action. Id. A claim accrues upon awareness of an actual injury, not upon awareness that the injury constitutes a legal wrong. See Elliott Reihner Siedzikowski & Egan, P.C., 161 F. Supp.2d 413, 421 (E.D. Pa. 2001).

Here, plaintiff filed the instant complaint on December 16, 2008. Plaintiff's claims are barred by the statute of limitations to the extent that they are based upon events which occurred prior to December 16, 2006. The complaint alleges that "[the] nullity was not docketed until 2005; but it was enforced as if it were legal." (Compl. ¶ 11.) On the basis of the complaint, it is evident that plaintiff's claims arose no later than 2005 – if not before. The exhibit attached to plaintiff's response to defendants' Motion is a letter dated July 22, 1996 from Justice Baer in his capacity as a common pleas court judge which is addressed to a party other than plaintiff. (Pl.'s Resp., Ex. A, Docket No. 11.)

Plaintiff argues in a conclusory manner that the acts against plaintiff occurred in March 2007. Although the continuing violation theory is typically raised in a discrimination case, the Court of Appeals for the Third Circuit has considered the theory with respect to § 1983 claims. See O'Conner v. Newark, 440 F.3d 125 (3d Cir. 2006) (holding that continuing violation doctrine did not toll the two-year limitations period of police officer's § 1983 claims where allegations in complaint were discrete and each gave rise to a cause of action at the time it occurred); see also Lott v. Cheney Univ. of Pa., No. 00-5283, 2001 WL 503394, at *3 n.6 (E.D. Pa. May 11, 2001 ) (assuming applicability of the continuing violation theory to a § 1983 case). The continuing violation theory, however, cannot be asserted against an individual defendant when no violation by the defendant occurred during a time frame within the statute of limitations period. See West v. Phila. Elec. Co., 45 F.3d 744, 754 -55 (3d Cir. 1995) ("'The crucial question [in a continuing violations theory] is whether any *present* violation exists.'") (quoting United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977)). The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern. Bronze Shields, Inc. v. N.J. Dept. of Civil Serv. 667 F.2d 1074 (D. N.J. 1981) (continuing violation theory did not apply to extend time for filing employment discrimination complaint with Equal Employment Opportunity Commission charging city with promulgating discriminatory roster for hiring police officers where plaintiffs received formal notice on date of roster's formal promulgation that they would not be hired as police officers and thus the employment practice about which they complained could be precisely identified and dated).

Here, plaintiff did not plead that Justice Baer committed any act after he was elected to the Supreme Court of Pennsylvania in 2003 or that he committed any act while a justice of the supreme court. Plaintiff's complaints can be precisely identified and dated and would have occurred prior to Justice Baer's election in 2003 to the supreme court. Plaintiff alleged: "Max Baer . . . reconsidered and overruled a lawful order appointing the Plaintiff, as Primary Physical Custodian of Plaintiff's minor child." (Compl. ¶ 8.) Justice Baer could not have acted at any time within the two-year statute of limitations since he has not served as a judge on the Court of Common Pleas of Allegheny County, Pennsylvania since 2003. A continuing violation theory is not applicable to plaintiff's claims against Judge Orie-Melvin because plaintiff precisely identified that Judge Orie-Melvin affirmed [Justice Baer's] nullity for the stated reason that "it was not appealed within thirty days of issuance." (Compl. ¶ 12.)

Plaintiff concludes that Judge Mulligan continued the violations when she reappointed the Allegheny County Solicitor as Title IV-D attorney. She has not served as the administrative judge since 2002. The continuing violation theory is not applicable to plaintiff's claims against Judge Mulligan for the same reasons that the continuing violation theory is not applicable to plaintiff's claims against Justice Baer and Judge Orie-Melvin – no action of Judge Mulligan occurred within the time period of the applicable statute of limitations, and because the actions of Judge Mulligan about which plaintiff complains can be precisely identified and dated.

Judicial immunity would also bar all or most of plaintiff's claims. A judge is immune from liability when (1) he or she has jurisdiction over the subject matter before her, and (2) he or she is performing a judicial act. Mireles v. Waco, 502 U.S. 9 (1991); Stump v. Sparkman, 435 U.S. 349, 356 (1978). The relevant inquiry is the "nature" and "function" of the act, not the "act" itself." Mireles, 502 U.S. at 13. The breadth of judicial immunity is broad and applies whether the actions complained of are alleged to have been in error, performed with malice, or in excess of the judge's authority. Stump, 435 U.S. at 356. A judge "will be subject to liability only when he has acted in a 'clear absence of all jurisdiction.'" Id. at 356-57 (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1872).

Here, plaintiff's claims against defendants arose from orders relating to his failure to pay child support. A parent supervising the welfare of a minor child commits an offense if he knowingly endangers the welfare of the child by violating a duty to support. 18 PA. CON. STAT. § 4304(a). Plaintiff's complaint appears based upon actions taken by defendants in the performance of their judicial responsibilities.

Plaintiff's reliance on Horn v. Hilltown Twp., 337 A.2d 858, 859 (Pa. 1975), for the proposition that dual Allegheny County solicitor representation is a due process violation as a matter of Pennsylvania law is misguided. The issue in Horn involved a position of conflict arising in the procedure followed at a zoning hearing board where the township solicitor also served at the hearing as the solicitor for the zoning board. Vernon and Edith Horn (the "Horns") operated a quarry and an asphalt plant on the quarry site. The Township of Hilltown passed a zoning ordinance prohibiting quarry operations in the area of the quarry site. Id. at 859. The township zoning officer issued a cease and desist order which the Horns disregarded. Id. The township solicitor filed a complaint, seeking an injunction and the matter was submitted to the township hearing board for a decision. The same solicitor conducted the hearing, ruled on evidence he presented, and advised the hearing board in legal matters concerning the Horns'

## V. Conclusion

For the reasons stated above, defendants' motion to dismiss plaintiff's claims against them is GRANTED.  Plaintiff's requests for declarative relief, injunctive relief and monetary damages are denied with prejudice because amendment would be futile.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that the court does not need to inform plaintiff that he has leave to amend within a set period of time when the amendment would be inequitable or futile).  The clerk shall mark this case closed.

By the court,

November 16, 2009

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc: John J. Tauro
5309 Perrysville Road, 1st Floor
Pittsburgh, PA 15229

---

case.  The Supreme Court of Pennsylvania held that where at the zoning board hearing the same solicitor represented both the zoning board and the township, which was opposed to the application for a zoning variance, that procedure was a denial of due process, even in the absence of a showing of harm to the property owners.

Plaintiff's reliance on Horn is misguided because the defendant judges here had no individual interest in the outcome of plaintiff's case.  Each defendant judge had jurisdiction over the subject matter before him or her and each was performing a judicial act.  No fact raised by plaintiff would negate a judge's protection of immunity.  The doctrine of absolute judicial immunity bars any damages based upon plaintiff's allegations relating to nonadministrative actions.  There are only conclusory allegations in plaintiff's response concerning nonadministrative actions which the court need not address due to the lack of subject-matter jurisdiction.  The court notes that judicial immunity applies to injunctive relief and attorney's fees as well as monetary damages.  42 U.S.C. § 1983 (providing that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity," "unless a declaratory decree was violated or declaratory relief was unavailable").  See Wallace v. Abell  217 F. App'x 124, 127 (3d Cir. 2007).